**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**BRANDIANN B.**

                              **Plaintiff,**                    **22-CV-00633-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

_____

**DECISION AND ORDER**

As set forth in the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings,

including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

**BACKGROUND**

On April 3, 2018, plaintiff, at the age of 30, protectively filed a Title XVI

application for supplemental security income ("SSI") benefits. Dkt. #6, pp. 460-465.[1]

Plaintiff alleged an onset date of March 20, 2018. Dkt. #6, p. 460.

Plaintiff alleged she was disabled due to post-traumatic stress disorder

("PTSD"); nervous breakdowns; trouble sleeping; depression; anxiety, possible

schizophrenia; hearing voices; inability to leave home alone; thyroid issues, and

Hashimoto's disease. Dkt. #6, p. 503. Plaintiff's claim was denied initially on August 17,

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

2018. Dkt. #6, pp. 100, 118-129. Plaintiff requested a hearing, and a telephonic hearing was held on September 8, 2021 before Administrative Law Judge ("ALJ") Michael J. Stacchini. Dkt. #6, pp. 37-71. Plaintiff appeared with counsel.

On examination by the ALJ, plaintiff testified that she and her husband are separated, and she lives with her daughter and son, who are 14 and 12 years old, respectively. Dkt. #6, p. 45. The previous year, she homeschooled her son. Dkt. #6, p. 46.

Plaintiff also testified that she attempted to join her kids in taking karate classes, but her PTSD made it too much for her, so she would just drop off her children and pick them up. Dkt. #6, p. 48.

As to hobbies, plaintiff testified that she crafts, but she has not engaged in her past hobbies of playing guitar, singing, or crocheting for some time. Dkt. #6, p. 49. She has one friend who visits sometimes. *Id.* She does not exercise. Dkt. #5, pp. 49-50. She used to take public transportation but now has her own car. Dkt. #5, p. 50.

Plaintiff testified that she shops for food locally, such as at Dollar General, rather than going to large stores such as Wal-Mart because crowds "freak her out." Dkt. #5, p. 50. She prepares meals in a crockpot or in the microwave because it is hard for her to stay focused on cooking. Dkt. #5, pp. 50-51. She enjoys having movie nights and playing video games with her kids. Dkt. #5, p. 51.

Next, plaintiff testified that she does her laundry at home. *Id.* She shares chores with her kids, but when she is having a bad day, they do most of the cleaning. Dkt. #5, p. 52. On good days, she can do all the cleaning by herself. *Id.*

Plaintiff testified that she has a good relationship with her sister, who provides positive support. *Id.*   She also attends parent/teacher conferences and has had no issues with the teachers. Dkt. #5, p. 53. She attended a church service about two weeks prior to the hearing. Dkt. #5, pp. 53-54.

The ALJ next asked plaintiff about her health. She testified that she is not limited physically, but she has mental health problems. Dkt. #5, p. 54. She also testified that she was not currently drinking alcohol or using marijuana, except occasionally when her friend brings marijuana to her home. Dkt. #5, pp. 54-55.

The ALJ asked plaintiff how her mental health impacted her ability to work. Plaintiff testified that if something is overwhelming, she has breakdowns or just walks away. Dkt. #6, p. 55. She testified that it is hard for her to work with a lot of people, and that her depression has been so bad that some days it is hard for her to get out of bed. Dkt. #5, pp. 55-56.

Plaintiff further testified that she was currently in therapy and her counselor gives her techniques to manage her anxiety. Dkt. #6, pp. 56-57. She was hospitalized in

March 2018, but has not been hospitalized since then. Dkt. #6, p. 57. She tried taking medications from 2014 to 2016, but they made her symptoms worse and had side effects, so she went off medications completely. *Id.* She also testified that it was overwhelming trying to remember what medications to take, and that she has been helped by medical marijuana and vitamins. Dkt. #6, p. 58.

Finally, plaintiff testified that there are days when she isolates herself from the world; has severe anxiety attacks; cries until she settles down; has rage from the anxiety and easily snaps; and feels overwhelmed by everything that needs to be done. Dkt. #6, pp. 59-60.

On examination by her counsel, plaintiff explained that when she feels rage from her anxiety, she lashes out verbally, sometimes at her children. Dkt. #6, pp. 60-61. Her bad periods last sometime for a couple of days or a week. Dkt. #6, p. 61. At other times, she is manic and then later exhausted. Dkt. #6, p. 62.

Her anxiety is often triggered by being out in public, and she has been very troubled by the separation from her husband. Dkt. #6, pp. 62-63. She can feel herself tense up when her anxiety is bad, so she tries to do something that makes her happy to get into a better mood. Dkt. #6, p. 63.

As to her concentration and focus, plaintiff testified that it can be "all over the road" from when she is manic and then depressed. Dkt. #6, p. 64. When she is manic, her focus is off, and when she is depressed, her focus is on being upset. Dkt. #6, p. 65.

Next, the ALJ heard testimony from Dale Pasculli, a vocational expert ("VE"). The ALJ asked the VE to assume a person of plaintiff's age, education, and work experience, without exertional limitations, who was limited to understanding, remembering, and carrying out[2] simple routine tasks with regular breaks in two-hour intervals and decision making and changes of work setting related to simple, routine tasks Dkt. #6, p. 66. She would also be limited to only occasional interaction with the general public, coworkers, and supervisors. *Id.*

The VE testified that such a person could perform the sedentary job of addresser; the light job of cleaner; and the medium job of packager. Dkt. #6, p. 67. The VE also testified that employers generally do not tolerate a person being off task more than 10% of the workday, beyond regularly scheduled breaks, which is approximately five minutes per hour. *Id.* Also, the VE testified that missing two days a month would preclude all full-time work. Dkt. #6, p. 68.

On examination by plaintiff's attorney, the VE testified that if the person was occasionally unable to respond appropriately to supervision, she would be unable to maintain any of the three jobs identified. Dkt. #6, pp. 69-70.

---

[2] The hearing transcript states "timeout," but that appears to be a stenographer's error. Dlt. #6, p. 66.

On September 29, 2021, the ALJ issued an unfavorable decision. Dkt. #6, pp. 16-36. The Appeals Council denied plaintiff's request for review on June 23, 2022, Dkt. #6, pp. 7-12, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging

in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since April 3, 2018, the application date; (2) plaintiff has the severe impairments of post-traumatic stress disorder, anxiety disorder, depressive disorder, bipolar disorder, alcohol abuse disorder, and cannabis abuse; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: she can understand, remember, and carry out simple routine tasks with regular breaks at 2-hour intervals with decision making and changes in work setting related to simple routine tasks; and she is

limited to occasional interaction with the general public, coworkers, and supervisors;  (5) plaintiff has no past relevant work; and (6) considering plaintiff's age (30 years old at the time of application), education (high school graduate), work experience, and RFC, plaintiff is able to perform the occupations of addresser, cleaner, and packager; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from April 3, 2018, to the date of the ALJ's decision. Dkt. #6, pp. 21-28.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**[3]

Plaintiff makes several challenges to the ALJ's decision: (1) he crafted the RFC out of "whole cloth" and failed to tether it to any medical opinion evidence, Dkt. #7-1, pp. 11-16; (2) the RFC is not supported by substantial evidence because the ALJ failed to incorporate into the RFC "moderate" limitations in the areas of concentration,

---

[3] Plaintiff challenges only the portions of the RFC concerning her mental limitations, so the Court need not address her non-severe, physical impairments.

persistence, and pace, as well as regulating emotions, controlling behavior, and maintaining well-being, Dkt. #7-1, pp. 17-24; (3) the ALJ improperly faulted plaintiff for non-compliance with treatment without considering how her mental health impacted her ability to attend treatment, Dkt. #7-1, pp. 24-26; and (4) the ALJ erred by relying on the addresser job identified by the VE because that job is obsolete, Dkt. #7-1, pp. 26-29.

The Court will consider each of these arguments in turn.

### The ALJ's Formulation of the RFC

"It is the ALJ's responsibility to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Terrence S. B. v. Comm'r of Soc. Sec.*, 1:22-cv0380, 2024 WL 4131237, at *3 (W.D.N.Y. Sept. 10, 2024) (citation and internal quotation marks omitted). "In doing so, an ALJ may not arbitrarily substitute [his/her] own judgment for competent medical opinion." *Id.*

"However, 'the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence.'" *Id.* (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022)). In fact, where the record as a whole "contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity. . . a medical source statement or formal medical opinion is not necessarily required." *Id.* (citations and internal quotation marks omitted).

Nor is it "necessary for the ALJ to find any particular medical opinion controlling or persuasive in order to make findings that are based upon substantial

evidence." *Id.* at *4 (citing *Schillo*, 31 F.4th at 78). If the ALJ departs from such opinions, however, he must "use the treatment notes, diagnostic tests, medical opinions, and other 'data points' to identify 'with specificity' how the RFC was formulated." *Id.*

Having reviewed the record, the Court concludes that the ALJ adhered to these principles in formulating plaintiff's RFC.

First, before turning to the RFC, the ALJ considered, at step 3, the paragraph B criteria to determine whether plaintiff's mental impairments "meet or medically equal the severity" of the relevant listings. Dkt. #6, pp. 22-23. The ALJ determined that plaintiff had the following limitations in each of the relevant areas of functioning: (1) "mild" limitation in understanding, remembering or applying information; (2) "moderate" limitation in interacting with others; (3) "moderate" limitation in concentrating, persisting or maintaining pace; and (4) "moderate" limitation in adapting or managing oneself. Dkt. #6, p. 22.

The ALJ specifically noted that the limitations identified at step 3 "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Dkt. #6, p. 23.

The ALJ then discussed plaintiff's RFC. He began by considering plaintiff's testimony that her depression and other mental health conditions were severely limiting and rendered her unable to concentrate or interact with others in public. Dkt. #6, p. 23.

He noted, however, that plaintiff's activities suggested differently: she homeschooled her son, prepared meals, drove, took public transportation, attended church, played video games with her children, and shopped, albeit at smaller stores to avoid crowds. Dkt. #6, pp. 23-24. The ALJ ultimately determined that plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Dkt. #6, p. 26.

It is well established that "the ALJ remains within [his] discretion to resolve discrepancies in the record for Plaintiff's activities of daily living absent proof of mischaracterization of the record." *Benjamin R. v. Comm'r of Soc. Sec.*, 23-CV-1100S, 2025 WL 350440, *5 (W.D.N.Y. Jan. 31, 2025) (citation omitted).

Next, the ALJ reviewed plaintiff's medical records from 2018 to 2021, observing that the records "do not corroborate the extent of functional compromise purported." Dkt. #6, p. 24. He noted that while plaintiff was hospitalized for two-days for suicidal ideation in March 2018, upon discharge, she was stable, and her symptoms were "under good control." Dkt. #6, p. 24.

The ALJ noted that plaintiff subsequently attended counseling on and off, but she declined to take medications for her mental impairments, opting for medical marijuana instead. *Id.* The ALJ noted that the balance of plaintiff's treatment records reflected that her mental conditions had some impact on her functioning, such as when her mood affected her attention and concentration. *Id.*

However, the records also showed that plaintiff's memory and ability to abstract were intact; her general fund of knowledge was adequate; she had fair insight and judgment; and she exhibited a stable mood, normal thought processes, and normal cognition and ability to relate. *Id.* In a telehealth visit in April 2021, plaintiff was "alert, oriented by 3 spheres with intact concentration and attention, fair judgment and insight, and appropriate language." *Id.* She also denied any homicidal or suicidal ideation. *Id.*

The ALJ next considered the report of consultative psychiatric examiner Dr. Susan Santarpia and the opinion of state agency psychological consultant, Dr. Chapman. Dkt. #6, p. 25. Upon examination, Dr. Santarpia found plaintiff to be coherent and goal directed with no evidence of hallucinations, delusions, or paranoia; she was oriented to person, place, and time; her attention, concentration, and recent and remote memory were intact; her cognitive functioning was in the average range; and her insight and judgment were fair. Dkt. #6, pp. 764-765.

Dr. Santarpia opined, *inter alia*, that plaintiff was able to understand, remember, and apply simple, as well as complex, directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; and sustain an ordinary routine and regular attendance at work. Dkt. #6, p. 765. She also opined that plaintiff demonstrated only "mild" impairment in regulating emotions, controlling behavior, and maintaining well-being. *Id.* Finally, she opined that, while plaintiff presented with psychiatric and substance abuse problems, they "do[ ] not

appear to be significant enough to interfere with the claimant's ability to function on a daily basis." *Id.*

Dr. Chapman opined that plaintiff would have moderate limitations in some work-related functions, but she retained "the capacity to perform the basic mental demands of unskilled work." Dkt. #6, pp. 106-111.

The ALJ found these two medical opinions persuasive to the extent that they reflected moderate limitations in plaintiff's ability to interact with others, maintain concentration, persistence and pace, and to regulate emotions and maintain well-being. Dkt. #6, p. 25. He noted such limitations were supported by plaintiff's medical records. *Id.*

The ALJ also found the opinions persuasive to the extent that they reflected no more than mild limitations in understanding, remembering and applying information "in view of" the objective findings from plaintiff's mental status examination and her activities of daily living. *Id.*

The ALJ incorporated these limitations into the RFC, limiting plaintiff to "occasional interaction with coworkers, supervisors and the public; simple routine tasks with regular breaks at 2-hour intervals and decision making and changes in work setting related to simple routine tasks." Dkt. #6, p. 26.

Plaintiff's argument that the ALJ crafted the RFC "out of whole cloth" and that it was not tethered to any medical opinion is thus not well taken. *See Terrence S. B.*, 2024 WL 4131237, at *4-5 (holding on similar record that the mental RFC assessed by the ALJ was supported by substantial evidence, and his explanation "was sufficiently specific to satisfy his obligation to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached") (citations and internal quotation marks omitted).[4]

### Limitation in Concentration, Persistence, and Pace

Plaintiff next argues that the ALJ failed to properly consider plaintiff's limitation in concentration, persistence and pace. Dkt. #7-1, pp. 19-21. Specifically, she relies on the ALJ's finding at step three of the sequential analysis that plaintiff had a "moderate" limitation in this area of functioning. Dkt. #7-1, p. 19; Dkt. #6, p. 22. This argument is legally flawed.

"The analysis performed at step three of the sequential analysis is separate and distinct from the RFC analysis." *Terrence S.B.,* 2024 WL 4131237, at *6. "Indeed, a Step three determination is not an RFC assessment, but instead is used to rate the

---

[4] Plaintiff's reliance on *Nicole M. S. v. Comm'r of Soc. Sec.*, 6:20-cv6492-JJM, 2022 WL 908645 (W.D.N.Y. Mar. 29, 2022), is misplaced. Plaintiff cites that case for the proposition that a mental RFC cannot be supported by substantial evidence unless it specifically credits a particular medical opinion. Dkt. #7-1, pp. 13-14. However, that case was decided prior to the decision in *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022), in which the Court of Appeals rejected such an argument. *See id.* at 78 ("[W]e also reject Schillo's argument that, having declined to afford controlling weight to any of the three physicians' opinions, the ALJ was thereby prohibited from making an RFC finding whatsoever.").

severity of a mental impairment." *Richard B. v. Comm'r of Soc. Sec.*, 1:20-CV-00585, 2021 WL 4316908, at *6  (W.D.N.Y. Sept. 23, 2021) (citation omitted).

"A determination made at step three therefore need not carry over verbatim to the ultimate RFC determination because the two determinations require distinct analysis. *Id.* "In fact, the standard for disability at step three is higher than the standard at steps four and five." *Id. See also Reeves v. Comm'r of Soc. Sec.*, 19-CV-775S, 2020 WL 4696589, at *3 (W.D.N.Y. Aug. 13, 2020) ("The ALJ may take the same information finding a moderate limitation for "paragraph B" criteria and conclude that Plaintiff's functional capacity is not impaired by that moderate limitation.").

As the Court explained in *Pidgeon v. Comm'r of Soc. Sec.*, 15-CV-6578 CJS, 2017 WL 4680412 (W.D.N.Y. Oct. 18, 2017):

> [T]o the extent Plaintiff contends that the ALJ was required to expressly include the moderate limitations (in concentration, persistence and pace) identified at Step 3 in the RFC determination, such argument lacks merit because the ALJ's findings at step 3 of the sequential analysis are not an RFC determination. . . . Nor is it necessarily error for an ALJ not to include findings made at Step 3 in the RFC. *See[ ] McIntyre v. Colvin*, 758 F.3d 146, 150-151 (2d Cir. 2014). . . . Rather, Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous.

*Id.* at *7 (citation and internal quotation marks omitted).

Here, the ALJ noted that Dr. Santarpia opined that plaintiff had *no* limitations in sustaining concentration and performing a task at a consistent pace. Dkt. #6, pp. 25, 765. He also noted that Dr. Chapman opined that plaintiff had no more than moderate limitations in work-related mental functions, and Dr. Chapman further concluded that plaintiff retained the capacity to perform the basic mental demands of unskilled work. Dkt. #6, pp. 25, 109-111.[5]

As noted above, the ALJ also considered plaintiff's testimony regarding the severity of her symptoms, but he concluded that it was not supported by the objective medical documentation and her daily activities.

Ultimately, the ALJ determined that the evidence showed that plaintiff was moderately limited in the ability to maintain concentration, persistence, and pace. Dkt. #6, p. 25. He thus included in the RFC a limitation to simple, routine tasks, as well as regular breaks at two-hour intervals. Dkt. #6, p. 23.

Courts within the Second Circuit "routinely find that similar limitations are sufficient to account for moderate limitations in concentration, persistence and pace." *Pichardo v. Comm'r of Soc. Sec.*, 21-cv-06873 (SDA), 2023 WL 2596970, at *18 (S.D.N.Y. Mar. 22, 2023) (RFC limiting plaintiff to simple, routine work at non-production pace sufficiently accounted for moderate concentration and pace limitations) (citations omitted). *See also Terrence S. B.*, 2024 WL 4131237, at *6 (RFC limiting plaintiff to simple,

---

[5] The Court also notes that, specifically as to the ability to perform at a consistent pace, Dr. Chapman opined that plaintiff was "not significantly limited." Dkt. #6, p. 110.

routine and repetitive tasks was sufficient to accommodate limitations in concentration, persistence, and pace); *Reeves*, 2020 WL 4696589, at *3-4 (medical records and consultative opinions showing that plaintiff had intact concentration supported RFC limiting plaintiff to simple work-related tasks, work-related decisions, and changes in a routine work setting; ALJ "had substantial evidence that Plaintiff's concentration, persistence and pace did not hinder her from performing simple tasks); *Coleman v. Comm'r of Soc. Sec.*, 6:17-CV-06411 EAW, 335 F. Supp.3d 389, 401 (W.D.N.Y. 2018) (RFC limiting plaintiff to performing only work that requires ability to understand, remember, and follow simple instructions is "fully consistent" with moderate limitations in concentration, persistence, and pace).

Therefore, remand on this basis is not warranted.

### Limitation in Regulating Emotions, Controlling Behavior, and Maintaining Well-Being

Plaintiff next argues that the ALJ failed to account for plaintiff's moderate limitation in regulating emotions, controlling behavior, and maintaining well-being. Dkt. #7-1, pp. 21-24. She further argues that the "ALJ should have included additional limitations, such as greater off task time, into the RFC." *Id.* This argument, while familiar, is without merit.

First, Dr. Santarpia opined that plaintiff would have only "mild" limitations in this area of functioning. Dkt. #6, p. 765. Nonetheless, the ALJ assessed a "moderate" limitation based on medical records showing "a periodically manic mood" and plaintiff's

"reports of rapid mood shifts, reports of irritability and difficulties with family relationships, but the ability to maintain relationships with friends." Dkt. #6, p. 25. The ALJ concluded that such limitations were "adequately addressed by limiting her to occasional interaction with coworkers, supervisors and the public; simple routine tasks with regular breaks at 2-hour intervals and decisionmaking and changes in work setting related to simple routine tasks." Dkt. #76, p. 26.

The ALJ's determination on this issue was not erroneous. *See Terrence S. B.*, 2024 WL 4131237, at *7 ("Up to moderate limitations in the functional area of regulating emotion, controlling behavior, and maintaining well-being may be accounted for in an RFC by limiting a plaintiff to simple, routine work with limited interactions with others.") (citations omitted).[6]

Finally, plaintiff's citation to *Jimmie E. v. Comm'r of Soc. Sec.*, 20-CV-0406, 2021 WL 2493337 (W.D.N.Y. June 18, 2021), is unavailing. Dkt. #7-1, pp. 22-23. There, the plaintiff not only had moderate limitations in regulating emotions and controlling behavior, but he also had a history of physical altercations with others. *Id.* at *4.

There is no such evidence in this record, and *Jimmie E.* is thus materially distinguishable. *See Terrence S. B.*, 2024 WL 4131237, at *8 (finding *Jimmie E.* inapplicable where plaintiff had no history of physical altercations with others).

---

[6] The Court also notes that the court in *Terrance S. B.* rejected plaintiff's identical argument regarding the inclusion of greater off task time. *Id.*

### *Non-Compliance with Treatment*

Plaintiff next argues that the ALJ improperly faulted plaintiff for non-compliance with treatment. Dkt. #7-1, pp. 24-26. This is a red herring.

The ALJ noted plaintiff's non-compliance with treatment recommendations during his review of her medical history. Dkt. #6, pp. 24. As part of his explanation for the RFC, the ALJ stated that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were inconsistent "in light of [her] poor treatment compliance and conservative care." Dkt. #6, p. 26. This was not error.

It is well established that, while an ALJ may not fault a claimant for not seeking mental health treatment or deem a lack of treatment alone to constitute substantial evidence," the ALJ may properly consider non-compliance in evaluating the plaintiff's subjective allegations. *Kelvin B. v. Comm'r of Soc. Sec.*, 6:21-CV-06018 EAW, 2023 WL 1431637, at *6 (W.D.N.Y. Feb. 1, 2023) (collecting cases).

### *Addresser Job*

Plaintiff's final argument is that the ALJ erred in relying on the job of addresser, which is obsolete, in determining whether there are jobs in the national economy that plaintiff can perform. Dkt. #7-1, pp. 26-29.

The Commissioner does not dispute that the job of addresser is obsolete but argues that the other two jobs identified by the VE exist in significant numbers to satisfy the step five showing. Dkt. #8-1, pp. 15-16.

The job of addresser is, indeed, "manifestly obsolete." *James B. v. Comm'r of Soc. Sec.*, Case # 23-CV-873-FPG, 2024 WL 4471080, at *2 (W.D.N.Y. Oct. 11, 2024).

However, the other two jobs—cleaner and packager—identified by the VE total 471,000 jobs in the national economy, which is more than sufficient. *See id.* (noting that numbers "between 9,000 and 10,000 jobs have typically been found to be sufficiently significant to meet the Commissioner's burden") (citation and internal quotation marks omitted).

Lastly, plaintiff argues that the VE's inclusion of the addresser job renders the entirety of her testimony unreliable. Dkt. #7-1, pp. 28-29. Plaintiff cites no authority for this proposition, and the Court notes that plaintiff's counsel made no objections to the VE's qualifications during the hearing before the ALJ and did not question her about the validity of the addresser job on cross-examination. Dkt. #6, pp. 66, 68-70.

For all these reasons, the Court concludes there is no basis for remand in this matter.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #8) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York

February 5, 2025

                                 **s/ H. Kenneth Schroeder, Jr.**
                                 **H. KENNETH SCHROEDER, JR.**
                                 **United States Magistrate Judge**